

Andrew Mullings, 075809426
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

January 23, 2023

**PRO SE INTAKE UNIT**
U.S. District Court, S.D.N.Y.
300 Quarropas Street, Room 633
White Plains, New York 10601

Case Name: *Mullings v. Burnett et al* & Case No. 22-CV-07922 (CS)
Respond to Honorable Cathy Seibel's Order dated 1/3/2023

Dear Honorable Seibel:

    In compliance with the Court's Order dated 1/3/2023, Plaintiff was unable to clearly identified the 40 John Does that he intended to sued in his complaint, except for John Doe #1 ("Doe #1") who condoned in the wrong doings on December 29, 2021 inside of 10-2 recreation room. The reason for this is because all of the John Doe CERT Officers that Plaintiff came in contact with was preventing him from looking at their face by giving him specific orders to "*Move up closer to the wall and keep [his] eyes locked on the wall.*" (*See* Compl. at 13). However, Plaintiff was able to looked at Doe #1's face when he came close-up to Plaintiff and told him to "shut the fuck up", after Plaintiff asked him if he could close the window to keep out the cool air because he do not want to get sick again. (*See id.* at 18). Even when CERT Officer Chad LeClair ("LeClair") push Plaintiff's room door wide opened, he too was preventing the Plaintiff from looking at his face by immediately ordered Plaintiff to turn around in his room, step out of his room back way, put his hands on the wall, take his hands off the, and to keep looking at the wall and do not move his head.

    The only time Plaintiff was able to see some of the NYSDOCCS employees' faces is when LeClair gave Plaintiff another ordered to stripped down to his underwear and had Plaintiff turn around, then Plaintiff saw defendant Burnett. (*See id.* at 6). Another time when Plaintiff was able to further identified other

defendants is when he entered the recreation room behind Burnett, and even though LeClair had one of his hand squeezing on Plaintiff's fingers and ordered Plaintiff to look only on the ground to prevent Plaintiff from seeing their face, during this time, Plaintiff had to casted his eyes and that's when he saw Thompson and the other John Does maliciously and sadistically opening all the windows to let in the very cold air to bring harm to Plaintiff and the other incarcerated individuals ("I/I").[1] At that time, Plaintiff was focusing his attention on Thompson and defendants 1 through 5 and the other personnel in Jacket suits because Plaintiff was surprised to seen how the higher authorities just stood there and condoning in the Eight Amendment violation of the basis human need of clothes and warmth, while they were properly dressed.

### Process Of Elimination To Identify Unidentify Does Using Cell Frisk Receipts

At best, Plaintiff can try to assist the AG and the Court to help him identify the 40 John Does by doing process of elimination. For example, housing unit 10-2 have 3 rooms: rooms 25 (Plaintiff's room), 26, and 27, and around 25 cubes. 3 rooms + 25 cubes = 28 CERT Officers. This mean, there were approximately 28 CERT Officers that stripped down 28 I/Is (including myself) down to our underwear and then escorted us to the back of the recreation room and left us there in the cold weather with the other John and Jane Does that were posted back there. These 28 CERT Officers then returned to search the 3 rooms and the 25 cubes. When they completed their searched, before they put Plaintiff back into his room, a CERT Officer ordered Plaintiff to stepped out of the recreation room back way with his fingers remained interlocked over his head; and this CERT Officers then started to squeezed on Plaitiff's fingers and ordered Plaintiff to look only at the ground to prevent Plaintiff from seeing their face. This CERT Officer humiliated Plaintiff by marching him around the front of the housing unit cubical area in which Plaintiff quickly casted his eyes again and noticed approximately 30 additional CERT Officers, male and female, colour and white, all lind-up against the walls. Then Plaintiff was brought back down into his room. Plaintiff did not included these additional 30 CERT Officers with the 40 John Doe that he intended to sued in his complaint. Plus there were more than 10 John Doe posted in the recreation room. Therefore the 40 John Does are reasonable to be sued.

---

[1] The John Does that helped opened the windows with Thompson were white guys and some of them had a kercheve around their faces.

The elimination process will start by doing this. There were approximately 28 CERT Officers that searched 3 rooms and 25 cubes in housing unit 10-2. LeClair was one of them. Subtract LeClair and 27 CERT Officers are left. The AG should contact the DOCCS agency counsel and ask for a copy of all 27 Cell Frisk receipts dated 12/29/2021. The 27 Cell Frisk receipts will show all 27 CERT Officers' badge numbers. Once this information is provided, the AG can use their badge numbers to get the John Does names and work addresses and provide their informations to Plaintiff. These 27 John Does are just as responsible for the constitutional deprivation that accord inside of housing unit 10-2 recreation room because when they escorted us into the recreation room and left us there in the very cold weather, upon information and belief, they either (1) observed or heard that the other John Does already opened the windows to let in the very cold air; (2) they either see or heard Plaintiff saying to LeClair that it is freezing back here; (3) see or heard when Plaintiff was telling LeClair to stop squeezing on his fingers, and (4) they also heard when LeClair denied Plaitiff his clothes to cover his body from the cold weather, yet they all failed in their duty to intervene. (*See id.* at 8-16,18). See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional are being violated in his presence by other officers."). See also Luna v. City of New York, 2019 U.S. Dist. LEXIS 135376, 2019 WL 3779420, at 19-20 (S.D.N.Y. 2019) ("An officer can be held liable under § 1983 for 'the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen had been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official'").

**Duty Log Book For CERT Officers Posted In 10-2 Recreation Room on 12/29/2021**

The AG should also obtain a copy of the duty log book from the NYSDOCCS agency counsel or from the CERT Officers supervisor. It will show all of the John and Jane Does that were posted inside of the recreation room. All these CERT Officers either directly participated in the unconstitutional acts by opening the windows to let in the very cold weather on Plaintiff simi-nude body, observed or heard Plaintiff interation with LeClair and Doe #1, had a duty to intervene, but failed to stop LeClair's and Doe #1 actions and failed to closed the windows, which led to Plaintiff's sickness and hospitalization. Moreover, the CERT Officers actions were premeditated and prearranged and was done without any penological justification reason because they opened all the windows in all the other housing

units throughout their 4 to 5 days operation before the Plaintiff's housing unit was searched. (*See id.* at 16, including Exhibit 4, *Rodriguez's Affidavit*).[2]

### Additonal Information To Use To Identify Doe #1

Since the AAG claimed at foot note 2 in his *Valentin* Requested Order for Modification that the agency counsel for NYSDOCCS asserted it cannot located Doe #1, even with the description that Plaintiff provided for Doe #1 (*See id. at foot note 4)*, the following information will assist the AG and the Court to find Doe #1: On the day of the search, an I/I named Sampson, I believe, was placed by CERT Officer(s) in a phone session area behind Plaintiff in the recreation room. Sampson was physical assaulted by a CERT Officer John Doe #4 ("Doe #4") who was posted back there. During the assault, Doe #4 was saying to Sampson, "Stop resisting! Stop resisting!" And Sampson was yelling out, "I am not resisting! I am not resisting!" Doe #4's supervisor was immediately notified of the incident, who arrived at the scene and asked both Sampson and Doe #4 what is going on, who both told the supervisor what had happened. When Plaintiff asked Doe #1 to close the windows, because he do not want to get sick again, and Doe #1 told Plaintiff to "shut the "fuck up", Doe #2 was standing outside the door, and a female Jane Doe #3 was outside looking in (*See id. 13 & 18)*. Plaintiff had literally took his head and eyes off the wall at the time to get their attention, then placed his eyes back on the wall. All three Does are white. Then Plaintiff heard a John Doe from Sampson's session was asking Doe #1 what's going on and Doe #1 told Doe #4 that Plaintiff had asked for the windows to be close. John Doe #2, Jane Doe #3, and John Doe #4 see or heard or was told about the conversation between Plaintiff and Doe #1 by Doe #1, yet they all failed to intervene. Upon information and belief, Doe #4 is the same Doe #4 that assault Sampson. The log book for the John Does that were posted in 10-2 recreation room on 12/29/21 will reveal the Doe #4 that assaulted Sampson, then Doe #4 should identify Doe #s 1,2, and 3, and Doe #4 should also be a defendant.

### Request To Make Further Identification At a Later Stage

In the alternative, Plaintiff request to make further identification at a later stage during discovery.

---

[2] NYSDOCCS Directive # 4910 (2) (b) states: "Strip searches or strip frisks shall be conducted in locations heated to level of human fomfort for disrobed persons. It was brought to Plaintiff's attention that one of the first rules that CERT Officers learned in the academy is to never strip searche prisoners in cold area.

Therefore, the Court and the AG should corabarate with NYSDOCCS agency counsel to provide Plaintiff with the above information to let him add these John Does and or Jane Doe to his complaint, as the CERT Officers is to be blame for the Plaitiff's inability to identify the unknown CERT Officers because they had given Plaintiff direct orders to keep looking at the ground.

I thank the Court and I hope to here from it at its earlies convience.

Very truly yours,

Andrew Mullings

cc: George P. Burns, Jr.
Assistant Attorney General
(914) 422-8765
George. Burns @ag.ny.gov



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
ANDREW R. MULLINGS,

                Plaintiff,                  **AFFIDAVIT OF SERVICE**

        -against-                    No. 22-CV-07922 (CS)

EDWARD BURNETT, et al.,

               Defendants.
------------------------------------------------

Andrew Mullings, hereby deposes and says:

I am over there 18 years of age, and I am proceeding as a *pro se* litigant in this matter.

That on January 23, 2023, I handed a instruction letter addressed to the *Pro se* Intake Unit located at the U.S. District Court, S.D.N.Y., 300 Quarropas Street, Room 633, White Plain, New York 10601 containing information to identify the additonal John and Jane Doe defendants to the Buffalo Federal Detention Facility Law Library authorities, to be mail to this Court, and a copy of the letter was also given to the authories to be mail to the following person:

                George P. Burns, Jr.
              Assistant Attorney General
              Attorney for Defendants
             44 South Broadway, 5th Floor
              White Plains, New York 10601

*Andrew Mullings*

SWORN TO BEFORE ME ON THIS 23
DAY OF January, 2023

_____         1430
NOTARY PUBLIC SIGNATURE        TIME OF NOTARY

KAYCEE LEIGH EVANS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01EV6413806
Qualified in Genesee County
Commission Expires February 01, 2025

Andrew Mullings, A# 075 809426
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

Buffalo Federal Detention Facility



RECEIVED
JAN 27 2023
U.S.D.C.
W.P.

LEGAL
MAIL

PRO SE INTAKE UNIT
U.S. District Court, S.D.N.Y.
300 Quarropas Street Room 633
White Plain, New York 10601



Court Deadline

RECEIVED
JAN 27 2023
PRO SE OFFICE